# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **DANIEL E. LUJAN,** | No. _____ |
| **Plaintiff,** | |
| v. | |
| **BOARD OF COUNTY COMMISSIONERS FOR CIBOLA COUNTY, CORECIVIC, INC., CORECIVIC, LLC, AND CORECIVIC OF TENNESSEE, LLC,** | |
| **Defendants.** | |

## NOTICE OF REMOVAL

Defendants CoreCivic, Inc, CoreCivic, LLC, and CoreCivic of Tennessee, LLC (collectively, "CoreCivic Defendants") and the Board of County Commissioners for Cibola County ("County"), through undersigned counsel and pursuant to 28 U.S.C. § 1442(a)(1), notice removal of the above-captioned case from the State of New Mexico, County of Cibola, Thirteenth Judicial District, Case No. D-1333-CV-2025-00097, to this Court and in support thereof assert:

1. On or about May 1, 2025, an action was commenced by Plaintiff in the State of New Mexico, County of Cibola, Thirteenth Judicial District, Case No. D D-1333-CV-2025-00097 against the County and CoreCivic Defendants (collectively "Defendants").

2. Undersigned counsel agreed to accept service on behalf of CoreCivic Defendants on May 5, 2025.

3. The County was served by Certified Mail sent to its registered agent on May 7, 2025.

4. This Notice of Removal is therefore timely pursuant to 28 U.S.C. § 1446(b)(1).

5.  Plaintiff, Daniel Lujan, is a federal detainee housed at the Cibola County Correctional Center ("CCCC") under the legal custody of the United States Marshals Service ("USMS").

6.  CoreCivic is a Maryland corporation with its headquarters in Brentwood, Tennessee. CoreCivic owns and operates CCCC, located in Milan, New Mexico. CoreCivic of Tennessee is a limited liability company organized and operating in the State of Tennessee.

7.  Plaintiff's Complaint, in part, makes the following allegations against CoreCivic Defendants:

   a.  "CCCC is a detention facility in Cibola County that is owned and operated by the CoreCivic Defendants." (Compl. at ¶ 9.)

   b.  "On May 27, 2024, Plaintiff was detained at CCCC pursuant to a contract that Defendant Cibola County had with the USMS." (*Id.* at ¶ 15.)

   c.  "Upon information and belief, the corrections officer assigned to Plaintiff's pod on May 27, 2024 did not meet the CCCC criteria to work in that pod." (*Id.* at ¶ 41.)

   d.  "At all times herein, the corrections officer assigned to Plaintiff's pod was acting within the course and scope of his duties as a corrections officer." (*Id.* at ¶ 42.)

   e.  "On May 27, 2024, the unqualified corrections officer assigned to work in Plaintiff's pod left unlocked the door to the cell housing two other inmates (hereinafter referred to as the 'attackers')." (*Id.* at ¶ 43.)

   f.  "The attackers escaped from their cell and attacked the unqualified corrections officer." (*Id.* at ¶ 45.)

   g.  "The attackers were armed with homemade weapons and wore homemade body armor." (*Id.* at ¶ 46.)

  h. "The attackers used the unqualified, subdued, and locked-up corrections officer's keys to unlock Plaintiff's cell." (*Id.* at ¶ 50.)

  i. "The attackers then attacked Plaintiff and Mr. Montoya with their homemade weapons." (*Id.* at ¶ 52.)

  j. "Upon information and belief, the attack lasted nearly ten (10) minutes before any corrections officers responded to the pod." (*Id.* at ¶ 56.)

  k. "Once corrections officers arrived at the pod and subdued the attackers, Plaintiff was escorted to CCCC's medical team, where he was kept until an ambulance arrived." (*Id.* at ¶ 61.)

  l. "Upon information and belief, the staff at CCCC knew that one or both of the attackers wanted to harm Plaintiff and/or his cellmate." (*Id.* at ¶ 65.)

  m. "Upon information and belief, the staff at CCCC knew that one or both of the attackers should not have been housed in the same pod as Plaintiff and/or his cellmate." (*Id.* at ¶ 66.)

  n. "The CoreCivic Defendants had a duty to exercise reasonable care to protect Plaintiff from harm." (*Id.* at ¶ 80.)

  o. "The CoreCivic Defendants breached that duty by allowing, failing to stop, and/or facilitating the escape of the inmates who attacked Plaintiff in a segregation unit where contact between inhabitants is disallowed by policy and procedure." (*Id.* at ¶ 81.)

8. CoreCivic Defendants are persons within the meaning of 28 U.S.C. § 1442(a)(1).

9. Due to a shortage of federally owned detention space to house detainees awaiting trial, the USMS routinely enters into Intergovernmental Agreements ("IGAs") with state and local governments to provide detention space and services for USMS detainees in privately operated facilities, such as CCCC. Under these "pass-through" IGAs, the USMS enters into an IGA with a

local government, which then enters into a contract with the owner of the privately operated detention facility, such as CoreCivic, to provide for the housing, care, and management of USMS detainees.

10. Pursuant to these "pass-through" IGAs, the owner of the privately operated detention facility carries out the detention of federal detainees on behalf of the federal government, thereby fulfilling the federal government's responsibility to provide for their safety and security. Thus, the owner of the privately operated detention facility acts on behalf of the USMS with respect to the detention of its federal detainees.

11. CoreCivic provides detention services, housing, subsistence, and care to USMS detainees at CCCC pursuant to an IGA ("the IGA") between the USMS and Cibola County to house USMS detainees at Cibola County Correctional Center, which is owned and operated by CoreCivic. Under this IGA, Cibola County serves as a "pass-through" entity to facilitate the management and operation of CCCC by CoreCivic pursuant to a separate agreement between Cibola County and CoreCivic. The intent of the IGA is to provide for the housing, care, and management of federal detainees at a contractor owned/operated facility, in this case CCCC.

12. Under the October 19, 2017 amendment to the IGA, the USMS expressly consented to Cibola County contracting out the management and operation of CCCC with respect to federal detainees to CoreCivic.

13. The IGA requires that federal detainees at CCCC be housed in a manner consistent with federal law and established federal detention standards.[1]

---

[1] At the time the IGA was entered into, USMS utilized the Core Detention Standards to review facilities housing federal detainees. USMS now utilizes the Federal Performance Based Detention Standards. These comprehensive standards cover administration, management, and staffing; healthcare services; security and control; safety and sanitation; food services; restrictive housing; and services and programs. *See* https://www.usmarshals.gov/resources/guideline/federal-performance-based-detention-standards-version-12.

14. To monitor compliance with applicable federal law and federal detention standards, the IGA dictates periodic inspection of CCCC by federal government inspectors and subject matter experts in accordance with the applicable federal detention standards.

15. The IGA further dictates that the federal government has access "[a]t all times" to CCCC, the federal detainees housed at CCCC, and all records of the federal detainees housed there.

16. CoreCivic and its employees and agents at CCCC are bound by all IGA provisions and modifications implemented by the USMS.

17. CoreCivic and its employees and agents at CCCC are obligated to abide by all applicable statutes, regulations, and standards promulgated by the United States and accrediting entities.

18. During the course of the IGA, CoreCivic and its employees and agents at CCCC are subject to monitoring and inspections by the United States.

19. CoreCivic is subject to regulation, inspection, approval, and monitoring of its hiring and retention practices at CCCC by the United States, including requiring that all CoreCivic employees and agents at CCCC undergo a federal background check to be able to work with federal detainees.

20. CoreCivic is subject to regulation, inspection, approval, and monitoring by the United States of its staffing at CCCC, including the type, qualifications, and number of security and medical staff working with federal detainees at CCCC.

21. Pursuant to the IGA, CoreCivic is responsible for the provision of healthcare services inside CCCC in accordance with the applicable USMS policy directives and federal detention standards. However, the federal government must pre-approve all outside medical care to federal detainees housed at CCCC, except in a medical emergency, and is financially responsible for outside medical care to federal detainees.

22. CoreCivic is subject to regulation, inspection, approval, and monitoring by the United States of the delivery of healthcare services to detainees at CCCC, including the type and number of medical care staff and quality of care.

23. The IGA provides that federal detainees may not be moved to another facility without permission from the federal government, and federal detainees may only be released to law enforcement officers of the authorized federal government agency initially committing the federal detainee or to a Deputy United States Marshal or USMS designee.

24. The IGA requires immediate notification to the federal government of the following at CCCC: any activity by a federal detainee that would likely result in litigation or alleged criminal activity, an escape of a federal detainee, and the death, assault, or medical emergency of a federal detainee.

25. The IGA dictates that all federal detainees in restrictive housing be personally observed by a correctional officer at least twice per hour, but not more than 40 minutes apart, on an irregular schedule.

26. The IGA requires monthly reporting to the USMS listing all USMS detainees housed in restrictive housing and the reasons for their assignment.

27. With respect to the detention of USMS detainees, such as Plaintiff, CoreCivic is a person acting under an officer of the United States pursuant to 28 U.S.C. § 1442(a)(1). Likewise, Plaintiff's claims against CoreCivic are claims for or relating to acts performed under color of federal office within the meaning of 28 U.S.C. § 1442(a)(1). These claims include, *inter alia*, failure to protect and provide safe and secure housing and oversight for Plaintiff, a USMS detainee, which he alleges resulted in an assault against him by other federal detainees while he was in the restrictive housing unit at CCCC.[2]

---

[2] In compliance with the IGA, CoreCivic staff reported the subject assault to the USMS.

28. With respect to Plaintiff's detention at CCCC, CoreCivic Defendants were acting under authority delegated to them by the USMS.

29. In doing so, CoreCivic Defendants were obligated to comply with the specifications and obligations within the IGA and federal detention standards concerning the custody, housing, safekeeping, subsistence, and care of the federal detainee population, as well as federal governmental supervision, monitoring, and approval of CoreCivic's staffing pattern, qualifications of staff, and individual staff hired.

30. During the course of the IGA, CoreCivic Defendants were subject to and obligated to follow directives and standards issued by the USMS with respect to the custody, housing, safekeeping, subsistence, and care of the federal detainee population at CCCC.

31. CoreCivic's management, operation, and staffing of CCCC was monitored, inspected, and approved by representatives of the United States government, including USMS, who ensured that CoreCivic was complying with federal standards and requirements.

32. CoreCivic Defendants met the standards set by the United States.

33. CoreCivic Defendants have the right to remove this action to this Honorable Federal District Court under 28 U.S.C. §§ 1442(a)(1) and 1446 and invoke this Court's original jurisdiction under 28 U.S.C. § 1346. *See Lind v. Ne. Ohio Corr. Ctr.*, 2022 WL 429453, at *2 (N.D. Ohio Jan. 27, 2022) (finding lawsuit involving federal contractor that housed a USMS detainee was properly removed under 28 U.S.C. § 1442).

34. Because the Court has federal officer jurisdiction over at least one of the claims asserted by Plaintiff, it has supplemental jurisdiction over all of Plaintiff's claims. 28 U.S.C. § 1367(a).

35. Defendants' efforts to affect this removal are in accordance with 28 U.S.C. § 1446.

36. A copy of the Complaint filed in the State of New Mexico, County of Cibola, Thirteenth Judicial District, Case No. D-1333-CV-2025-00097 and served upon Defendants is attached as **Exhibit A**. *See* 28 U.S.C. § 1446(a).

37. A Notice of Filing Notice of Removal, a true and correct copy of which is attached as **Exhibit B**, is being simultaneously filed in the State of New Mexico, County of Cibola, Thirteenth Judicial District, Case No. D-1333-CV-2025-00097. *See* 28 U.S.C. § 1446(d).

WHEREFORE, Defendants respectfully request that the above action now pending in the State of New Mexico, County of Cibola, Thirteenth Judicial District be removed to this Court.

Dated:  June 4, 2025

*/s/ Anne M. Orcutt*
Daniel P. Struck, AZ Bar No. 012377
Jacob B. Lee, NM Bar No. 154613
Anne M. Orcutt, AZ Bar No. 029387
STRUCK LOVE ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
Tel.: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
jlee@strucklove.com
aorcutt@strucklove.com

Deborah D. Wells
Debra J. Moulton
KENNEDY, MOULTON & WELLS, P.C.
2201 San Pedro N.E., Bldg. 3, Suite 200
Albuquerque, NM  87110
Tel.: (505) 844-7887
Fax: (505) 844-7123
ddwells@kmwpc.com
dmoulton@kmwpc.com

*Attorneys for Defendants CoreCivic, Inc, CoreCivic, LLC, and CoreCivic of Tennessee, LLC, and Board of County Commissioners for Cibola County*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Jason Wallace
HUFFMAN WALLACE & MONAGLE, LLC
122 Wellesley Dr. SE
Albuquerque, NM 87106
Tel: 505-255-6300
jason@hwm.law

*Attorney for Plaintiff*

/s/ Kim Penny