IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANIEL E. LUJAN.

    Plaintiff,

v.                                                      No. 1:25-cv-00527-SMD-JFR

BOARD OF COUNTY COMMISSIONERS
FOR CIBOLA COUNTY, ET AL.,

    Defendants.

## MOTION TO REMAND

Plaintiff, by and through his attorneys of record, hereby moves this Court for an Order to Remand this action to the Thirteenth Judicial District Court for the State of New Mexico. As grounds therefore, Plaintiff provides:

## BACKGROUND

Plaintiff filed his Complaint for Damages (hereinafter, the "Complaint") in the Thirteenth Judicial District Court for the County of Cibola on May 1, 2025. *See generally*, Doc. 1, Exhibit A. The Complaint seeks damages against the named Defendants for violations of state law: negligence, the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1, et seq., and the New Mexico Civil Rights Act, NMSA 1978, § 41-4A-1, et seq. The violations are alleged to have occurred on May 27, 2024. Doc. 1, Exhibit A, ¶ 39. The Complaint names as defendants the Board of County Commissioners for the County of Cibola (the "County") and the various, relevant corporate entities that, collectively, make up the private defendants (hereinafter, referred to as "CoreCivic"), which own and operate the Cibola County Correctional Center (hereinafter, the "Facility"). *See generally,* Doc. 1, Exhibit A. The Complaint alleges

1

that, pursuant to CoreCivic's own policies, a CoreCivic employee unqualified to monitor segregation units left a cell unlocked in a segregation unit at the Facility, which allowed detainees to escape from their cell and gain access to Plaintiff's cell.  Doc. 1, Exhibit A, ¶¶ 33-61.

The Complaint does not raise a federal claim.  The Complaint does not raise a state claim against a federal entity or a federal contractor.  The Complaint does not raise a state claim against an individual employed by—or acting on behalf of—a federal entity or federal contractor.  The Complaint only raises state claims against state actors: the County and the County's contractor, CoreCivic.

On June 4, 2025, Defendants filed a Notice of Removal on the basis that CoreCivic are "persons within the meaning of 28 U.S.C. § 1442(a)(1)," which is commonly referred to as the Federal Officer Removal Statute (hereinafter, the "Removal Statute").  Doc. 1 at ¶ 8.  Defendants claim that CoreCivic should be considered federal actors within the purview of the Removal Statute based on Plaintiff's status as a pre-trial detainee at the Facility who faces federal charges.  Doc. 1 at ¶ 5.  Essentially, Defendants claim that at the time of the incident giving rise to the Complaint, CoreCivic was acting under color—and at the direction—of the United States Marshals Service (hereinafter, the "USMS").  As further addressed below, Defendants make this claim despite CoreCivic only being contractually bound and obligated to the County.  The USMS entered into an Inter-Governmental Services Agreement ("IGSA") with the County—not CoreCivic.  CoreCivic's only Contract for detaining individuals at the Facility is between CoreCivic and the County.  There is not a single agreement between CoreCivic and the USMS for detention of individuals at the Facility.  Despite the absence of contractual duties and obligations, and despite being paid by the County for detaining Plaintiff, CoreCivic

claims that leaving a cell unlocked was done so at the direction of a federal officer and under color of the USMS.

There are three (3) relevant contracts that controlled the Defendants and their duties and obligations on May 27, 2024:

1. A July 2021 Agreement between the County and CoreCivic (hereinafter, the "County Contract"). *See* Exhibit 1, attached hereto.

2. An October 2016 Agreement between the County and CoreCivic for an IGSA between the County and United States Immigration and Customs Enforcement ("ICE") (hereinafter, the "ICE Agreement"). *See* Exhibit 2, attached hereto.

3. An October 2017 IGSA between the County and the USMS (hereinafter, the "USMS IGSA"). *See* Exhibit 3, attached hereto.

These three (3) contracts share a crucial commonality: none of them are contracts between CoreCivic and the USMS. The best piece of evidence that Defendants have to suggest there is a contract between CoreCivic and the USMS begins on page 15 of Exhibit 3: a same-day amendment to the USMS IGSA that was only signed by the County and the USMS. *See generally* Exhibit 3, pp. 15-18. Defendants' Notice of Removal suggests that this amendment makes the County a "pass-through" entity. Doc 1, ¶ 9. As Plaintiff explains below, the same-day amendment to Exhibit 3 only contractually binds the County and the USMS. That there is this degree of separation between CoreCivic and the USMS at this particular Facility is significant under the analysis required when applying the Removal Statute to private companies.

Plaintiff's position is simply this: with respect to this specific Facility on the specific date in question, CoreCivic's actions cannot possibly fall under the purview of the Removal Statute, because CoreCivic was not contractually bound to the USMS. As

such, CoreCivic did not act under the direction of a federal officer or under color of a federal agency. Plaintiff's lawsuit was properly filed in the Thirteenth Judicial District Court for the State of New Mexico, because Plaintiff brings state claims against state actors.

## ARGUMENT

"Private defendants may remove under § 1442(a)(1) if they can show (1) they acted under the direction of a federal officer, (2) the claim has a connection or association with government-directed conduct, and (3) they have a colorable federal defense to the claim or claims." *Bd. Of Cnty. Comm'rs v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1251 (10th Cir. 2022). The Removal Statute's "purpose is to protect the federal government from state-court proceedings that may reflect local prejudice against unpopular federal laws or federal officials." *Doe v. Integris Health, Inc.*, 123 F.4th 1189, 1192 (10th Cir. 2024).

The Notice states that the USMS IGA "requires federal detainees at [the Facility] be housed in a manner consistent with federal law and established federal detention standards" and that "the federal government has access at all times to [the Facility]." Doc 1, ¶¶13-15. In *Suncor Energy*, however, the Tenth Circuit squarely rejected the argument that a private company could invoke the Removal Statute based solely on its compliance with detailed federal regulations and contractual obligations. *See Bd. Of Cnty. Comm'rs v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1250-53 (10th Cir. 2022). The Court emphasized that the Removal Statute requires a defendant to show it was "acting under" a federal officer, which necessitates a relationship of "subjection, guidance, or control" and an effort to assist in carrying out federal duties. *Id* at 1251, quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151-52 (2007). The Tenth Circuit concluded that mere

compliance with regulatory requirements, without a "special relationship" involving assistance or delegation of official duties, is insufficient to justify removal. *Id*. The Tenth Circuit provided the following analysis of the most relevant Supreme Court opinion:

> In [*Watson v. Philip Morris Cos*., 551 U.S. 142, 127 S. Ct. 2301], the Court considered whether the Philip Morris Companies were 'acting under' a federal officer or agency when they tested and advertised their cigarettes in compliance with the Federal Trade Commission's [("FTC")] detailed regulations. *Id*. at 136. … The Court explained, "the private contractor [that is subject to sufficiently close supervision] is helping the [g]overnment to produce an item that it needs," unlike Philip Morris, which was simply conducting its operations in compliance with federal law. *Id*. In other words, "[t]he assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *Id*.
>
> …
>
> This analysis of *Watson* and related caselaw indicates which types of contracts between federal superiors and private firms are special enough to satisfy the "acting under" prong for § 1442 removal. The private firm must go beyond mere compliance with contractual terms, even if complex, and agree to help carry out the duties or tasks of the federal superior under the superior's strict guidance or control. …[T]he "acted under" element may be established through the explicit contractual delegation of legal authority to act on the federal superior's behalf."

*Suncor Energy* at 1252-53. The Supreme Court's analysis not only suggests federal contractor status as a baseline requirement in the Removal Statute's applicability to private actors—it also suggests that not all federal contractors might meet the criteria.

The Supreme Court's distinction between a private entity being a federal contractor as opposed to being subjected to even intense regulation is supported by the federal government's definition of what constitutes a federal contractor. The Federal Acquisition Regulation defines a "federal contractor" as "a party to a Government contract other than the Government." 48 C.F.R. § 2.101. The Contract Disputes Act similarly defines "contractor" as "a party to a Federal Government contract other than the

Federal Government." 41 U.S.C. § 7101(7). The U.S. Department of Labor's Office of Federal Contract Compliance Programs ("OFCCP") applies its contractor compliance rules only to entities with direct federal contracts, not those merely serving subcontractor roles.[1]

In *Lind v. Ne. Ohio Corr. Ctr.*, 2022 WL 429453, at *2 (N.D. Ohio Jan. 27, 2022), the only case cited in Defendants' Notice, the Court found removal under the Removal Statute was proper but noted that CoreCivic was "<u>a federal contractor</u> providing detention services to the [USMS] pursuant to a contract with the [USDOJ]." Emphasis added. With regard to the "acting under direction of a federal officer" requirement, the Court in *Lind* found that the defendants met this standard "because of their <u>contract</u> with the USDOJ" and that "CoreCivic must meet a variety of specifications both <u>in the contract</u> and as a part of the Federal Performance-Based Detention Standards issued by the [USDOJ]." *Id*. Emphasis added. Here, CoreCivic has no contract with the USDOJ.

While Defendants claim that "[t]he intent of the [USMS IGSA] is to provide for the housing, care, and management of federal detainees as a contractor owned/operated facility" (Doc 1, ¶ 11), the USMS IGA does not establish contractual duties or obligations from CoreCivic to the USMS. Nor does the USMS IGSA establish contractual duties or obligations to pay from USMS to CoreCivic. Nor does Plaintiff's status as a USMS detainee establish a contract between CoreCivic and the USMS. CoreCivic's obligations to comply with federal detention standards (as stated in the Notice at ¶¶ 13-31) arise only from their agreement with the County. Because CoreCivic is not contracted with the federal government (with regard to this specific Facility during

---

[1] *See* 41 C.F.R. § 60-1.3 (defining "Government contractor" as a person holding a government contract); *see also* OFCCP FAQs, "Coverage & Jurisdiction," U.S. Department of Labor, https://www.dol.gov/agencies/ofccp/faqs.

6

the relevant timeframe), it is not a "federal contractor" like it was in *Lind*. Without that direct, contractual relationship, the Defendants in this case cannot plausibly claim that CoreCivic was "acting under the direction of a federal officer" or "under color" of a federal office. At best, CoreCivic was acting under the direction of, or under color of, a political subdivision of the State of New Mexico.

As the Supreme Court explained in *Watson*, a private entity does not "act under" a federal officer simply because it is subject to intense regulation or performs tasks that benefit the federal government, as Defendants claim. *See* Doc. 1, ¶¶ 13-31. There is no dispute that the type of work CoreCivic performs for the County is federally regulated—but it is not controlled or directed by the USMS. CoreCivic cannot demonstrate a "special relationship" with the federal government—one that involves subjection, guidance, or control—when it does not even have a contract with the federal government, which is how the federal government so exercises subjection, guidance, and control of its contractors. Even the right of inspection that CoreCivic claims the USMS has is a contractual right granted to the USMS by the County, not CoreCivic. The Supreme Court emphasized that "[t]he fact that a federal agency directs, supervises, and monitors a company's activities in considerable detail does not bring the company within § 1442(a)(1)'s scope and thereby permit removal." *Watson* at 142. Thus, under *Watson*, only private parties directly enlisted by the federal government to perform governmental tasks under contract should qualify for the protections of the Removal Statute—and that does not include CoreCivic in this particular instance.

The USMS IGA binds the County to a services contract with the USMS, and the same-day amendment merely captures the USMS' agreement with the County that the County may satisfy its contractual obligations by reliance on the County's contractor.

But this does not make CoreCivic a "federal contractor"—CoreCivic and the federal government do not have a single agreement between them (for this Facility) with representatives from each as a signatory. How then can the USMS possibly guide and control CoreCivic's activity in considerable detail? The only answer is the federal detention standards and regulations that CoreCivic claims it is subject to. But as shown above, that is not enough. And, despite requirements to adhere to federal detention standards, the County and its contractor must also abide by applicable state and local laws, which are the only claims alleged in Plaintiff's Complaint. *See* Exhibit 3, p. 3.[2]

Despite the absence of a services contract between CoreCivic and the USMS, Defendants posit that this Court should treat CoreCivic as a federal contractor for purposes of Removal.[3] Defendants support this position by simply highlighting the contractual duties that CoreCivic owes to <u>the County</u> and claiming that these are instead owed to the USMS.

Lastly, Defendants posit that the ICE Management Agreement "is what controls the relationship with respect to federal detainees like [Plaintiff]." *See* Exhibit 4, attached hereto (the "Management Agreement" referenced in the first full paragraph is what Plaintiff's refers to as the ICE Management Agreement). The USMS (and ICE, for that matter) is not a party to the ICE Management Agreement—the only parties are CoreCivic and the County. *See* generally, Exhibit 3.

---

[2] "The Local Government shall accept and provide for the secure custody, safekeeping, housing, subsistence and care of Federal detainees in accordance with all state and local laws, regulations, policies and court orders applicable to the operation of the Facility…[d]etainees shall also be housed in a manner that is consistent with Federal law and the Core Detention Standards and/or any other standards required by an authorized agency whose detainees are housed by the Local Government pursuant to this Agreement." See Exhibit 3, p. 3.

[3] If the USMS sued CoreCivic for breach of contract, Plaintiff wonders whether CoreCivic would raise lack of contract as a defense.

8

ICE is a federal organization that falls under the Department of Homeland Security. The USMS is a federal organization that falls under the Department of Justice. These departments are in different cabinets of the federal government. They have different missions and different chains of command. That the Defendants claim that the ICE Management Agreement is what controls the relationship between the CoreCivic Defendants and the USMS is further support for how attenuated the argument is for removal. Defendants want this Court to apply the Removal Statute to Plaintiff's state claims on the basis that an agreement between CoreCivic and the County regarding ICE detainees somehow equates to *Watson* levels of direct control and oversight of CoreCivic's actions by the USMS. The leap is simply far too great.

## **CONCLUSION**:

CoreCivic's own contractual history with the USMS is perhaps most indicative of whether CoreCivic should receive the benefit of the Removal Statute in this action. CoreCivic has been a federal contractor before—even in New Mexico—and it may even currently be a federal contractor for services in other states, like we saw in *Lind* in Ohio. But CoreCivic was *not* a federal contractor for the services provided at the Facility here in New Mexico when Plaintiff was injured. The Removal Statute should *not* apply to the facts of this action. This lawsuit is a product of state actors' violations of a pretrial detainee's rights afforded to him under the laws of New Mexico. Whether a person be detained facing federal charges or state charges, what matters is who agrees to detain them and under what circumstances. That Cibola County assumed state liability for Plaintiff's safety when it agreed with the USMS to detain him is an issue for Cibola County to answer for. That CoreCivic agreed to share in that liability by serving as Cibola County's contractor is an issue for CoreCivic to answer for—in state court.

The USMS is not responsible for Plaintiff's injuries when Cibola County and its contractor violate the civil rights afforded to Plaintiff by the State of New Mexico. The extent of the USMS's factual involvement in this case is limited to having handed Plaintiff to the County and the County's contractor to hold Plaintiff until trial. When the Court considers that the factual allegations are, essentially, that state actors failed to lock a jail cell, this Court should not hold that those actions were made "under the color" of a federal officer.

WHEREFORE, Plaintiff respectfully requests that his Court enter an Order remanding this action to the Thirteenth Judicial District Court for the State of New Mexico.

Respectfully submitted,

HUFFMAN WALLACE & MONAGLE, LLC

*/s/ Jason Wallace   07/22/2025*
JASON WALLACE
122 Wellesley Dr SE
Albuquerque, NM 87106
(505) 255-6300, (505) 255-6323 Fax

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Daniel P. Struck, AZ Bar No. 012377
Jacob B. Lee, NM Bar No. 154613
Anne M. Orcutt, AZ Bar No. 029387
STRUCK LOVE ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226

Tel.: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
jlee@strucklove.com
aorcutt@strucklove.com

Deborah D. Wells
Debra J. Moulton
KENNEDY, MOULTON & WELLS, P.C.
2201 San Pedro N.E., Bldg. 3, Suite 200
Albuquerque, NM 87110
Tel.: (505) 844-7887
Fax: (505) 844-7123
ddwells@kmwpc.com
dmoulton@kmwpc.com

*Attorneys for Defendants CoreCivic, Inc, CoreCivic, LLC, CoreCivic of Tennessee, LLC, and Board of County Commissioners for Cibola County*


*/s/ Jason Wallace*
Jason Wallace
*Attorney for Plaintiff*